# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:21-cv-00348-MR

| | |
|---|---|
| JOHNATHAN A. FULLER, et al., ) | |
| Plaintiff, ) | |
| vs. ) | **ORDER** |
| R. HONEYCUTT, et al., ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint [Doc. 1], filed under 42 U.S.C. § 1983. See 28 U.S.C. §§ 1915(e) and 1915A. Plaintiff is proceeding in forma pauperis. [Docs. 2, 6].

## I.     BACKGROUND

Pro se Plaintiff Johnathan A. Fuller ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Mountain View Correctional Institution in Spruce Pine, North Carolina. On November 29, 2021, he filed this action on behalf of himself and seven other inmate Plaintiffs,[1] pursuant to 42 U.S.C. § 1983, against fourteen officers and employees of Avery/Mitchell Correctional Institution (AMCI), Plaintiff's previous place of

---

[1] Only Plaintiff has signed the Complaint in this matter [see Doc. 1 at 5] and none of the other putative Plaintiffs have filed Applications to Proceed Without Prepayment of Fees and Costs.

incarceration, as well as the North Carolina Department of Public Safety (NCDPS); Todd Ishee, identified as the NCDPS Commissioner; and Erik Hooks, identified as the NCDPS Secretary. [Doc.1]. The AMCI officer Defendants include R. Honeycutt, Superintendent; James Waldroop, Unit Manager; Landon Browning, Assistant Unit Manager; FNU Lamm, identified as a caseworker; FNU Watson, Captain; FNU Grindstaff, Captain; FNU Penland, Lieutenant; FNU Korger, Captain; FNU Farthing, Captain; FNU Boyle, Captain; FNU Jones, Sergeant; FNU Hudgins, Unit Manager; FNU McMahan, Correctional Officer; and FNU Banks, Correctional Officer. [Id. at 1-2, 10].

Plaintiff alleges the following. On February 26, presumably of 2021 [See, Id. at 11], at 2:30 p.m., while housed at AMCI, Yancey Unit, D-block, he and the other inmates in D-block, who were "mostly people of color," were led by the Superintendent, Unit Managers, and other staff outside through the freezing rain to Watauga Unit located approximately 50 yards away. [Id. at 2, 11]. They were all strip searched and forced to wait for two hours in "soaked" clothing. Meanwhile staff returned to Yancey Unit and removed the inmates' personal property. Plaintiff later learned that this was Defendant Honeycutt's "attempt to deter the prison population from getting high on K-2." [Id. at 11]. The lockers of Plaintiff and "most other 'people of color'" had

2

been marked with racial hate messages written in the inmates' own toothpastes, creams, and markers. For the rest of that day, the phones were shut off. Later that evening, the plumbing backed up and the block was flooded with wastewater, which the inmates had to walk through and smell for the next 24 hours. The personal property was eventually returned a week later, although it "was mixed-up and lost." [Id.]. Plaintiff alleges that all staff that was involved and that "condoned" these actions are named in the Complaint. [Id.]. Plaintiff does not enumerate which Defendant(s) were personally involved, other than Honeycutt, and which Defendant(s) merely condoned the actions.

Plaintiff makes the following claims based on this conduct: (1) "cruel and unusual punishment" for removing the putative Plaintiffs' property and failing to report what happened; (2) violation of due process and equal protection rights under the Fourteenth Amendment for punishing Plaintiffs "without legitimate cause" and "without a trial;" (3) denial of access to the Courts because Plaintiff was unable to work on his other pending cases in this Court while he was without his property; (4) "denial of religious practice" because Plaintiff's religious materials were removed; and (5) illegal search and seizure because there was "no legitimate cause" for removing the

3

property.[2]  [Doc. 1 at 3, 12]

For injuries, Plaintiff claims, in addition to the lost and damaged property, that Plaintiffs and their families have been "mentally and emotionally anguished."  [Id. at 3].

For relief, Plaintiff seeks monetary and injunctive relief and punitive damages.  [Id. at 5].

## II.  STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2).  Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.  28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios.

---

[2] Plaintiff does not assert a Fourth Amendment claim based on the alleged strip search and the Court, therefore, does not address it.

Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

### A. The Other Plaintiffs

Plaintiff purports to bring this action on behalf of himself and seven other inmates at AMCI, alleging that these other inmates were subject to the same conduct as Plaintiff and generally suffered the same injuries. Multiple prisoners may not join together as plaintiffs in a single § 1983 action, primarily because of the filing fee requirement found in the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(b)(1).[3] See Davis v. Aldridge, No.

---

[3] "Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees

5

3:20-cv-00592, 2020 WL 5502306, at *1 (S.D. W.Va. Sept. 11, 2020) (collecting cases).  Moreover, a pro se inmate may not represent other inmates in a class action, Fowler v. Lee, 18 Fed. App'x 164, 165 (4th Cir. 2001), and may not sign pleadings on their behalf, Davis, 2020 WL 5502306, at *1 (citation omitted).  The Court, therefore, will dismiss the other Plaintiffs on initial review. This dismissal is without prejudice.  These individuals may bring suit on their own behalf and are responsible for their own filing fees should they wish to do so.  The Court may later, in its discretion, consolidate the actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. Campbell v. Boston Scientific Corp., 882 F.3d 70, 74 (4th Cir. 2018) (citation omitted).  The Court, therefore, will review the Complaint as it relates to the Plaintiff only.

### B.    Defendant NCDPS

Neither the State of North Carolina nor its agencies constitute "persons" subject to suit under Section 1983.  Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989).  Furthermore, the Eleventh Amendment bars Plaintiff's suit for monetary damages against the State of North Carolina and

---

required by law, an initial partial filing fee of 20 percent of the greater of – (A) the average monthly deposits to the prisoner's account; or (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal."  28 U.S.C. § 1915(b)(1).

6

Case 1:21-cv-00348-MR   Document 8   Filed 01/03/22   Page 6 of 16

its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). As such, the NCDPS is dismissed as a Defendant in this matter.

### C. Defendants Ishee and Hooks

To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants "acted personally" to cause the alleged violation. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). As such, the doctrine of respondeat superior does not apply in actions brought under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Plaintiff makes no allegations of personal participation by Defendants Ishee or Hooks and appears to rely solely on their supervisory status in naming them as Defendants in this matter. The Court, therefore, will dismiss them.

### D. First Amendment

#### 1. Denial of Access to the Courts

Prisoners must have meaningful access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). The "meaningful access" referred to in Bounds does not, however, entitle a plaintiff to total or unlimited access. See Moore v. Gray, No. 5:04-CT-918-FL, 2005 WL 3448047, at *1 (E.D.N.C. Jan. 26, 2005), aff'd, 133 Fed. App'x 913 (4th Cir. 2005) (unpublished) (citation omitted). The right of access to the courts only requires that prisoners have the capability of bringing challenges to sentences or conditions of

7

Case 1:21-cv-00348-MR   Document 8   Filed 01/03/22   Page 7 of 16

confinement. See Lewis v. Casey, 518 U.S. 343, 356-57 (1996). Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id. A plaintiff's "[f]ailure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to his Bounds claim." Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting Casey, 518 U.S. at 353).

Plaintiff here alleges only that he was unable to work on his other pending cases because his legal documents were taken. [Doc. 1 at 12]. Plaintiff does not allege that he has been prevented from bringing a challenge to his sentence or his conditions of confinement or that he has otherwise suffered any actual injury. Plaintiff, therefore, has not stated a claim under the First Amendment based on denial of access to the Courts. The Court will, therefore, dismiss this claim on initial review.

### 2. Removal of Religious Property

Plaintiff's claims that his constitutional rights were violated because he was denied religious practice by the temporary removal of his religious property. The Free Exercise Clause of the First Amendment states that "Congress shall make no law . . . prohibiting the free exercise [of religion]."

U.S. Const. amend. I. The Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). Here, taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, the Court finds that, to the extent Plaintiff intended to assert a First Amendment free exercise claim, he has failed. Denial of access to religious property for one week does not amount to a substantial burden on Plaintiff's exercise of his religion. This claim will be dismissed.

### C. Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons … against unreasonable searches and seizures." U.S. CONST. amend. IV. "The applicability of the Fourth Amendment turns on whether 'the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action.'" King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Hudson v. Palmer, 468 U.S. 517, 525, 104 S. Ct. 3194 (1984)

(internal quotations omitted)). A prisoner, however, has no legitimate expectation of privacy in his prison cell. Hudson, 468 U.S. at 528. Plaintiff, therefore, has failed to state a claim for relief under the Fourth Amendment based on an alleged illegal search and seizure of his property. The Court will dismiss this claim.

### D. Eighth Amendment

Plaintiff claims that the Defendants' removal of his property amounted to "cruel and unusual punishment." [Doc. 1 at 3]. The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Plaintiff's claim here that he was subjected to cruel and unusual punishment based on the temporary taking of his property simply does not fall within the protections of the Eighth Amendment. The Court, therefore, will dismiss this claim on initial review.

### E. Fourteenth Amendment

Plaintiff alleges that his Fourteenth Amendment rights were violated because he was punished "without legitimate cause" and "without a trial" and

because he was denied "equal protection of the law and NCDPS Policy." [Doc. 1 at 3].

### 1. Equal Protection

To state an equal protection claim, Plaintiff must allege that he has been treated differently from others with whom he is similarly situated, and that the unequal treatment was the result of intentional or purposeful discrimination. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In doing so, the plaintiff must set forth "specific, non-conclusory factual allegations that establish an improper [discriminatory] motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) (quoting Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001)). Under some circumstances, racial profiling can support a finding of an equal protection violation, Green v. Maroules, 211 Fed. App'x 159, 162 (4th Cir. 2006), and racial statements can serve as evidence of discriminatory intent, see Mullen v. Princess Anne Volunteer Fire Co., 853 F.2d 1130, 1133 (4th Cir. 1988) (citation omitted). However, "racial epithets do not implicate constitutional rights because, no matter how abhorrent or reprehensible a racial epithet may be, it cannot itself form the basis of a constitutional claim." Martin v. Harrison Cty Sheriff's Dept., No. 1:06CV62, 2006 WL 3760132, at *3 (Dec. 15, 2006 N.D. W.Va.) (citation and internal quotation marks omitted). See Carter v. Morris, 164

F.3d 215, 219 n.3 (4th Cir. 1999) (explaining that officers' alleged use of racial epithets standing alone did not violate plaintiff's constitutional rights).

Here, Plaintiff alleges that he, along with the other D-block inmates, most but not all of whom were also people of color, were strip searched and temporarily deprived of their property. Plaintiff alleges that these acts were intended to deter the prison population from getting high on K2. Plaintiff also alleges that his locker was marked with "racial hate messages" while he was in Watauga Unit. Thus, the only difference in treatment between Plaintiff, a black inmate, and the other, presumably white, inmates were the racial hate messages. That is, all D-block inmates, regardless of color, were subject to the strip search and property search and temporary seizure which by Plaintiff's own allegations had a non-discriminatory motive. Giving Plaintiff the benefit of every reasonable inference, these allegations are insufficient to survive initial review on Plaintiff's equal protection claim against Defendants. As such, the Court will dismiss Plaintiff's equal protection claim.

### 2. Due Process

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997).

Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Moreover, changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise violative of the Constitution.'") (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).

Plaintiff here alleges that he was punished without cause and "without a trial." Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has failed to state a claim for violation of his Fourteenth Amendment due process rights. Plaintiff's allegations of a

strip search and a property search and temporary seizure do not show any "atypical and significant hardship … in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

Furthermore, even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Plaintiff may bring his claim for the deprivation of his property in state court. As such, Plaintiff has also failed to state a claim for relief under the Fourteenth Amendment's due process clause.

### F. Official Capacity Claims

Finally, to the extent Plaintiff intends to sue Defendants in their official capacities, these claims will also be dismissed.[4] "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will, 491 U.S. at 71. Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794,

---

[4] Plaintiff does not allege whether he intends to sue Defendants in their individual or official capacities or both.

14

Case 1:21-cv-00348-MR Document 8 Filed 01/03/22 Page 14 of 16

2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, as noted the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger, 352 F.3d at 844-45. As such, any claims by Plaintiff against Defendants in their official capacities do not survive initial review and will be dismissed.

In sum, Plaintiff has failed to state any claim for relief under § 1983. The Court will, however, allow Plaintiff the opportunity to amend his complaint to state a claim for relief, if the facts support such an amendment. Should Plaintiff decide to amend his Complaint, he is admonished that he must specifically allege how each Defendant personally participated in the alleged conduct.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's Complaint fails initial review. The Court will allow Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to properly state a claim upon which relief can be granted. Any amended complaint will be subject to all timeliness and procedural requirements and will supersede the Complaint. Piecemeal amendment will not be permitted. Should Plaintiff fail to timely amend his Complaint in accordance with this Order, the Court will dismiss this action without prejudice.

# **ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff shall have thirty (30) days in which to amend his Complaint in accordance with the terms of this Order. If Plaintiff fails to so amend his Complaint, the matter will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's official capacity claims against all Defendants are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants NCDPS, Ishee and Hooks are **DISMISSED** as Defendants in this matter.

The Clerk is respectfully instructed to mail Plaintiff a blank prisoner § 1983 form.

**IT IS SO ORDERED**.

Signed: January 3, 2022

Martin Reidinger
Chief United States District Judge