UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00348-MR

JOHNATHAN A. FULLER, )
)
        Plaintiff, )
)
vs. ) <u>ORDER</u>
)
RONNIE HUNEYCUTT, et al., )
)
        Defendants. )
_____ )

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss. [Doc. 19].

## I.    BACKGROUND

Pro se Plaintiff Johnathan A. Fuller ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Mountain View Correctional Institution in Spruce Pine, North Carolina. On November 29, 2021, Plaintiff filed this action pursuant to 42 U.S.C. § 1983 against fourteen officers and employees of Avery/Mitchell Correctional Institution (AMCI), Plaintiff's previous place of incarceration, as well as the North Carolina Department of Public Safety (NCDPS); Todd Ishee, identified as the NCDPS Commissioner; and Erik Hooks, identified as the NCDPS Secretary. [Doc. 1]. On initial review of Plaintiff's Complaint, the Court found that Plaintiff

failed to state any claim for relief under § 1983 and allowed Plaintiff thirty days to amend his Complaint. [Doc. 8]. In Plaintiff's verified Administrative Remedies Statement, he simultaneously attested that: (1) "There are no grievance procedures at the correctional facility at which [he] is being confined;" (2) "[he] exhausted [his] administrative remedies and … attached copies of grievances demonstrating completion;" and (3) "[he had] not exhausted [his] administrative remedies." [Doc. 7 at 1]. Plaintiff included a copy of a purported grievance dated August 20, 2021, that he had sent to Commissioner Ishee regarding the events giving rise to this action. In this grievance to Ishee, Plaintiff stated, "I have made several attempts to exhaust this grievance to be denied that right." [Id. at 6]. This purported grievance was returned to Plaintiff on September 14, 2021, by Sam Dotson, NCDPS Operations Manager. [See Doc. 7 at 3]. Dotson advised Plaintiff that the grievance was being returned so that Plaintiff could "process it through the proper channel at the facility." [Id.].

Plaintiff timely filed an unsworn, unverified Amended Complaint, which added several Defendants and omitted several others previously named. [Doc. 11]. In his Amended Complaint, Plaintiff alleged, in pertinent part, that on February 25, 2021, Plaintiff and most other inmates "of African descent" were directed to pack their belonging to be moved to a different cell block.

2

The next day Defendants Honeycutt, Waldroop, and Browning, with other unidentified prison staff, led Plaintiff and the other African American inmates outside in the freezing rain, where they were strip searched and left in the rain while staff removed the inmates' property from their lockers. Plaintiff's property included his legal mail. After Plaintiff and the other inmates were allowed to return to the block, Defendant Honeycutt told the inmates, as a pretext for the search, that "he was tired of guys getting high on a substance call[ed] K-2." Plaintiff and the other African American inmates discovered "racially charged hate messages" written inside their lockers using their own toothpaste, markers, and the like. Later that evening, the plumbing in the block backed up with sewage waste, which continued for the next 24 hours. The inmates had to urinate in drains and defecate in bags. Plaintiff believes these conditions were punishment aimed at people of color and those who closely associated with them. Defendant Honeycutt, through Defendant Waldroop, ordered that Plaintiff and the other inmates remain in the block for seven days. After seven days, the inmates' property was returned, but in damaged condition. [Doc. 11 at 4, 12-13].

In his Amended Complaint, Plaintiff alleges that he filed a grievance "immediately upon" return of his property and that he knows the grievance "was destroyed because [he] never even got a notice of it being received."

[Id. at 14]. Plaintiff alleges that prison officials thwarted his ability to exhaust a grievance in retaliation for prior and pending lawsuits. [Id.]. Plaintiff also alleges that he sent an "emergency grievance" and affidavit to Secretary Hooks and Commissioner Ishee, but never received a response. [Id.]. Plaintiff alleges that "he wrote other grievance(s) addressing the grievance process and access [and] … staff handling of the grievance by letter and affidavit to the director (Todd Ishee) and Secretary (Erik Hooks) of Prisons." [Id. at 8]. Other than the "emergency grievance" sent to Commissioner Ishee in August 2021, Plaintiff has not submitted copies of any of these alleged grievances.

Plaintiff's Amended Complaint passed initial review, as specified in the Court's Order, as to his First Amendment, Eighth Amendment, and Fourteenth Amendment equal protection individual claims against Defendants Ronnie Huneycutt, James Waldroop, Landon Browning, Angela Lamm, James Brian Watson, Keenan Banks, Shane Banks, Edward Nile Colvin, Jerry K. McKinney, and James Ray Queen, all officers or officials at AMCI. [Doc. 10 at 14-15].

Defendants now move to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] [Doc. 22]. Defendants argue that Plaintiff failed to exhaust administrative remedies pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), before filing this action. [Doc. 23 at 1]. On June 8, 2022, this Court entered an order, in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of his right to respond to Defendants' motion and cautioning him that his failure to respond would likely result in Defendant being granted dismissal of Plaintiff's Complaint. [Doc. 24]. Plaintiff has not responded to Defendants' motion and the time to do so has expired.

The matter is now ripe for adjudication.

## II. DISCUSSION

The PLRA requires a prisoner to exhaust his administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

---

[1] Defendant Keenan Banks remains unserved and did not join in Defendants' motion. Because the claims and factual allegations against this Defendant are identical to those against Defendants Shane Banks, McKinney, McQueen, Colvin, Lamm, McMahan, and Watson, the Court will consider Defendants' motion relative to Defendant Keenan Banks as well.

5

administrative remedies as are available are exhausted." Id. In Porter v. Nussle, the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. 534 U.S. 516, 532 (2002). The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that, under the PLRA, exhaustion must take place before the commencement of the civil action to further the efficient administration of justice. Id.

In Woodford v. Ngo, the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Further, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). Because exhaustion of administrative remedies is an affirmative defense, Defendants have the burden of pleading and proving lack of exhaustion. Id. at 216.

Finally, it is well-settled that a prisoner may not exhaust his administrative remedies during the pendency of a Section 1983 action;

6

Case 1:21-cv-00348-MR   Document 26   Filed 08/02/22   Page 6 of 11

rather, he must fully exhaust all steps of the administrative process before filing his lawsuit. See Germain v. Shearin, 653 Fed. Appx. 231, 234 (4th Cir. 2016); French v. Warden, 442 F. App'x 845, 846 (4th Cir. 2011). The North Carolina Department of Public Safety (NCDPS) has established, in its Administrative Remedies Procedures ("ARP"), a three-step procedure governing submission and review of inmate grievances. Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008). Inmates are required to exhaust administrative remedies with the NCDPS in accordance with ARP. Id. An inmate does not exhaust his administrative remedies with the NCDPS until he completes all three steps. Id.

Here, Plaintiff alleges in his unverified Amended Complaint that he submitted a grievance regarding the events at issue that was discarded by prison officials in retaliation for Plaintiff's prior and pending lawsuits. Plaintiff also claimed in a much-belated unsworn statement to Commissioner Ishee that he "made several attempts to exhaust this grievance" and was "denied that right." Other than his internally contradictory Administrative Remedies Statement, however, Plaintiff has not submitted any sworn statements or evidence supporting his claim of exhaustion.

In support of their motion to dismiss, Defendants, on the other hand, provide copies of Plaintiff's eight fully exhausted grievances submitted from

7

Case 1:21-cv-00348-MR   Document 26   Filed 08/02/22   Page 7 of 11

October 12, 2020, to September 20, 2021, as provided by the Inmate Grievance Resolution Board ("IGRB") through Kimberly Grande, the Executive Director of the NCDPS IGRB. [Doc. 23-1 through 23-9]. See Yarber v. Capital Bank, 944 F.Supp.2d 437, 441 (E.D.N.C. Mar. 18, 2013) ("The court may also consider documents attached to the complaint and documents attached to the motion to dismiss if those documents are integral to the complaint and authentic."); see also Doc. 23-1 at ¶¶ 9-10: Grande Dec. (attesting to complete review of grievance records and authenticity of attached grievances). Grande attests that these grievances were the only ones filed by Plaintiff and exhausted through Step Three of the grievance process. [Doc. 23-1 at ¶ 10]. These eight grievances range from complaints about lost property to inadequate medical care to improper placement in the "death row unit" at Central Prison. [See Doc. 23-2 through 23-9]. None of these grievances, however, relate to the events giving rise to this cause of action. [See id.]. Further, the record clearly evidences Plaintiff's access to and adeptness at navigating the grievance process. Finally, as noted, Plaintiff presented nothing in response to Defendants' showing on exhaustion.

Exhaustion is excused "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725. Plaintiff,

however, must show that administrative remedies were not available. Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011); Stohl v. Eastern Reg'l Jail, No. 1:14-cv-109, 2015 WL 5304135, at *7 (N.D.W. Va. Sep. 8, 2015) (granting defendants' motion to dismiss and refusing to credit conclusory allegation that grievances were discarded where such allegation "not only is unsupported by any of the evidence in the record, but is belied" by documentary evidence showing plaintiff successfully filed other grievances during the same time period).

Defendants here have shown through sworn testimony that Plaintiff did not exhaust his administrative remedies relative to the facts giving rise to this cause of action before Plaintiff filed his Complaint. Plaintiff, however, did not respond to dispute Defendants' showing of Plaintiff's failure to exhaust. In Plaintiff's only verified statement before the Court, he attested that there are no grievance procedures at his facility, that he exhausted his administrative remedies and attached copies of grievances demonstrating exhaustion, and that he had not exhausted his administrative remedies. [Doc. 7 at 1]. These cannot all be true. Moreover, Plaintiff's claim that his grievance was discarded in retaliation for his prior and pending lawsuits makes little sense in the context of eight other grievances that were processed and fully exhausted over a year during the relevant time. Despite express instructions

9

to Plaintiff of his right to respond to Defendants' motion and the consequences for failing to do so, the only relevant "grievance" before the Court is Plaintiff's submission to Commissioner Ishee, which was not properly submitted or exhausted. See Woodford, 548 U.S. at 83-84 (filing an untimely or otherwise procedurally defective grievance or appeal is insufficient; proper exhaustion is required). Plaintiff has not shown that administrative remedies were not available to him thereby excusing the exhaustion requirement. As such, this action must be dismissed without prejudice. See Harris v. Midford, No. 1:10-cv-263, 2011 WL 1601446 (W.D.N.C. Apr. 27, 2011). The Court will, therefore, grant Defendants' motion to dismiss.

### III. CONCLUSION

In sum, for the reasons stated herein, the Court grants Defendants' motion to dismiss as to all Defendants.

### ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss [Doc. 22] is **GRANTED** and this action is hereby **DISMISSED without prejudice** for failure to exhaust administrative remedies.

**IT IS SO ORDERED**.

Signed: August 1, 2022

Martin Reidinger
Chief United States District Judge